## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**HOANG NGUYEN,**

**Plaintiff,**

**v.**                                        **Case No. 16-2654-JAR**

**UNIFIED GOVERNMENT OF WYANDOTTE COUNTY/KANSAS CITY, KANSAS,**

**Defendant.**

### MEMORANDUM AND ORDER

Plaintiff Hoang Nguyen brings this action against his employer the Unified Government of Wyandotte County/Kansas City, Kansas ("Defendant"), alleging discrimination on the basis of race and national origin and retaliatory non-promotion under Title VII and 42 U.S.C. § 1981. This matter is before the Court on the parties' cross motions for summary judgment (Docs. 42 and 44). The motions are fully briefed and the Court is prepared to rule. For the reasons stated below, the Court denies Plaintiff's motion for summary judgment and partially grants Defendant's motion for summary judgment.

## I.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[1] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a

---

[1] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[2] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

reasonable jury could return a verdict for the nonmoving party."[3]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4]  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[5]

To prevail on a motion for summary judgment on a claim upon which the moving party also bears the burden of proof at trial, the moving party must demonstrate "no reasonable trier of fact could find other than for the moving party."[6]  The facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[7]  Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[8]  The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[9]  "Where, as here, the parties file cross-motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."[10]  The Court considers cross-motions separately: the denial of one does not require the grant of the

---

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[4] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6] *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015).

[7] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[8] Fed. R. Civ. P. 56(c)(4).

[9] *Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[10] *James Barlow Family Ltd. P'ship v. David M Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citation omitted).

other.[11]  "To the extent the cross-motions overlap, however, the Court may address the legal arguments together."[12]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[14]

## II.    Uncontroverted Facts

Defendant is a consolidated government of a county and a city of the first class with all the powers, functions, and duties afforded to counties and cities of the first class under the Kansas Constitution and statutes.  Defendant is also a Kansas municipal corporation organized and existing under the laws of the State of Kansas.  The Kansas City Board of Public Utilities ("BPU") is an administrative agency of Defendant.  The BPU is a public utility that provides potable water and electrical services.

On or about May 31, 2003, Defendant hired Plaintiff, an Asian-American male of Vietnamese origin, as a Mechanical Engineer to work at its Quindaro Plant.  In the fall of 2010, the position of Director of Electric Production Operations was posted available following the retirement of John Fuentes.  The Director position required "a B.S. in Mechanical Engineering from an accredited institution and a minimum of 5 years related work in coal fired steam-electric generation; or, equivalent professional experience consisting of a minimum of 10 years of

---

[11] *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

[12] *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010) (quotations omitted).

[13] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (quoting Fed. R. Civ. P. 1).

[14] *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

progressive operating experience, 4 years management/supervision experience with additional post high school education preferred."[15]  Plaintiff applied for the position.

At the time, Don Gray, the General Manager of BPU, and Darrell Dorsey, then Manager of Electric Production and Supply, disagreed regarding whether the vacant position should be filled with an engineer or someone with significant plant operations experience.  Gray preferred someone with operational experience, while Dorsey wanted to fill the position with an engineer. Gray delegated the task of selecting a new director to Dorsey, the manager of that department.

After going through the selection process, Dorsey recommended Plaintiff for the position over Patrick Knefel, a BPU employee who did not possess an engineering degree but had over 30 years of operations experience.  Gray accepted Dorsey's recommendation and awarded the position to Plaintiff, effective January 1, 2011.

On February 2, 2012, prior to Dorsey's retirement, Gray issued a memorandum to BPU employees and the Board advising that Dorsey's manager position would become two positions: 1) Manager of Electric Production and 2) Manager of Electric Supply.[16]  At the same time, Gray appointed Dong Quach as Acting Manager of Electric Production and Bob Adams as Acting Manager of Supply.  On or about February 28, 2012, Dorsey retired and Quach became Plaintiff's supervisor.

On March 15, 2012, Plaintiff received a positive evaluation.[17]

On October 3, 2012, Gray and Quach met with Plaintiff.  Gray informed Plaintiff that he was being removed from the position of Director of Electric Production Operations due to concerns over morale and reports of one of Plaintiff's shift supervisors being under the influence

---

[15] Doc. 43-4 at 1.

[16] Doc. 53-11 at 2.

[17] Doc. 45-7.

of alcohol while at work.[18]  Plaintiff was demoted to Mechanical Engineer, but his salary

remained at the director level through the end of the year.

Gray appointed Knefel as Acting Director of Electric Production Operations in the

meantime.  Gray tasked Quach with finding a new Director and working to elevate Plaintiff to a

higher engineering position.  On or about January 3, 2013, after Quach created a new Senior

Engineering position, Plaintiff was promoted to Senior Engineer.[19]

On March 15, 2013, Plaintiff submitted a written internal complaint to Defendant's

Human Resources Division, stating:

> I was demoted from Director Electric Production Operations to Mechanical
> Engineer by Mr. Don Gray at 9:30 a.m. October 3rd, 2012 in his conference room
> without any reasons.  He promoted Patrick Knefel to take my job.
>
> * * *
> I believed I have been discriminated, unfaired (sic) treated, violated (sic) my
> EEO.  I have worked hard on all my assignments.  However, I am suffering by
> this unfair treatment and discrimination since.[20]

Plaintiff requested the job posting for the Director position be taken down while the situation

remained unresolved.[21]  He also requested reinstatement as Director of Electric Production

Operations.[22]

That same day, Ashley Culp, Defendant's Employment and Compliance Coordinator,

sent Plaintiff a memorandum acknowledging receipt of his complaint and informed him that

Human Resources ("HR") would "conduct[] a thorough investigation" of his complaint.[23]  On

April 12, 2013, Culp sent Plaintiff a memorandum informing him that "[b]ased upon the

---

[18] Doc. 45-13.

[19] Doc. 45-9.

[20] Doc. 45-14 at 2 (emphasis in original).

[21] *Id.*

[22] *Id.*

[23] Doc. 45-15 at 2.

information this office has received, there is no evidence of discrimination, unfair treatment, or violation of EEO . . . ."[24]

On October 31, 2013, following the selection process, Dong Quach recommended Knefel for the position of Director of Electric Production Operations. Gray approved Quach's recommendation and promoted Knefel to Director of Electric Production Operations.

Knefel retired on March 1, 2014, which led to the posting of his position in Job Bid No. 4112. The minimum requirements for the Director position were:

> a B.S. in [e]ither Electrical or Mechanical Engineering from an accredited institution and a minimum of 5 years related work in coal fired steam-electric generation; or, equivalent professional experience consisting of a minimum of 10 years of progressive operating experience, 4 years management/supervision experience with additional post high school education preferred. The incumbent must have extensive knowledge and understanding of power plant theory and operating principles and good understanding of all aspects of power plant maintenance, engineering and environmental. The incumbent must have the ability to simultaneously manage a variety of issues and objectively interact with both union and non-union employees as necessary. Must be a good communicator with verbal, numerical, and planning perception to a high degree (sic).[25]

Plaintiff, Jason Moe, George Cooper, Tung Nguyen, Chad Newbill, Daniel Rollins, David Lynnes, and Josef Perez applied for the job. All but Perez were interviewed.

Defendant hired John Fuentes, a former Director of Electric Production Operations, to consult and assist Quach with the selection of a new director. In September 2014, Quach and Fuentes interviewed seven applicants using a questionnaire pre-approved by HR.

On October 3, 2014, in an internal office memo to Gray, Quach recommended Moe for the job, stating: "After a thorough review, Jason Moe is being recommended for [Director of

---

[24] Doc. 45-17 at 2.

[25] Doc. 45-5.

Electric Production Operations]. Jason has demonstrated extensive power plant knowledge and a good command of understanding in the power plant industry."[26] Quach testified that:

> Overall Jason Moe kn[e]w the plant really well and he has a great personality to be as a supervisor and he — as far as personality, I mean, he can talk to anybody. He can fit in any environment and he can rally people, so those are the three key things at that time we looked at.[27]

Quach also testified that Moe's communication skills were exceptional: "he has no accent and he definitely speaks clearly and people can understand him easily."[28] In contrast, Quach testified that Plaintiff was "hard to understand sometimes," "he tend[ed] to speak pretty softly," his "pronunciation . . . is a little bit deficient . . . given the time he's been in [the U.S.]", and "it's very hard to understand him" particularly in a big group meeting.[29] Quach said that communication skill was a significant factor in his decision not to select Plaintiff for promotion.[30]

Gray had the ultimate authority to approve or deny a manager's recommendation. As he had done previously, Gray deferred to the judgment of his manager and adopted Quach's recommendation to promote Moe.

On November 10, 2014, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of race and national origin and retaliation for complaining of discrimination. The EEOC issued Plaintiff a notice of right to sue on June 27, 2016. Plaintiff filed this action on September 26, 2016, alleging discrimination on the basis of race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42

---

[26] Doc. 43-19.

[27] Doc. 43-18, Quach Dep. 93:18–24.

[28] Doc. 45-2, Quach Dep. 101: 10–13.

[29] *Id*. 56:10–57:25.

[30] *Id*. 111:20–112:3.

U.S.C. § 2000e et seq. (race and national origin discrimination) and 42 U.S.C. § 1981 (race discrimination), and retaliatory nonselection in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.[31]

## III.    Analysis

Defendant seeks summary judgment on four grounds: 1) Plaintiff's § 1981 claims fail as a matter of law because he did not assert them under § 1983; 2) Plaintiff's retaliatory non-selection claim fails for lack of causal connection; 3) Plaintiff's discrimination and retaliation claims fail because he cannot meet his burden of showing Defendant's nondiscriminatory reasons for not promoting him were pretexts; and 4) § 2000e-3 of Title VII and § 1981a(b) prohibit Plaintiff from recovering compensatory damages against a political subdivision based upon claims of discrimination and retaliatory non-selection.  Plaintiff seeks summary judgment on his discrimination claim, arguing Defendant's stated nondiscriminatory reasons are unsupported by the record and that his Vietnamese accent was the real reason for his demotion and non-promotion.  Because the issues in Plaintiff's motion overlap with Defendant's third ground for summary judgment, the Court will address them together.

### A.    Section 1981 Claims and the Effect of Failing to Allege § 1983

It is well-settled law that § 1983 provides the exclusive remedy for pursuing damages against a municipality for claims arising under § 1981.[32]  Plaintiff concedes this and that he did not cite § 1983 in his amended complaint or the Pretrial Order.  He argues, however, that he has essentially asserted a claim under §§ 1981 and 1983.  Alternatively, he argues the proper remedy

---

[31] Doc. 39, Pretrial Order at 2.  All future references to "Section" or "§" are to Title 42, United States Code, unless otherwise noted.

[32] *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989).

for this "mere pleading defect" is to permit him to amend his complaint to add a § 1983 claim.[33]

In support of this argument, Plaintiff cites several decisions authorizing such relief: *Bolden v. City of Topeka*,[34] *Dockery v. Unified School District No. 231*,[35] *Stewart v. Board of Commissioners for Shawnee County, Kansas*,[36] and *Sims v. Unified Government of Wyandotte County*.[37]

The Supreme Court has rejected a heightened standard of pleading in claims against municipalities.[38] "Nevertheless, pursuant to Fed. R. Civ. P. 8(a), a plaintiff must make at least minimal factual allegations on every element."[39] Conclusory allegations will not sustain a plaintiff's pleading burden.[40] With these principles in mind, the Court finds that Plaintiff's allegations in his amended complaint and the Pretrial Order fail to state a municipal liability claim under § 1983.

A plaintiff suing a county/city under § 1983 must plead the defendant "caused the harm through the execution of its own policy or customs or by those whose edicts or acts may fairly be said to represent official policy."[41] The latter method generally entails alleging a "final policymaker" acted in violation of his equal rights.[42] Plaintiff did not cite § 1983 or allege that

---

[33] Doc. 50 at 30–31.

[34] 441 F.3d 1129 (10th Cir. 2006).

[35] 382 F. Supp. 2d 1234 (D. Kan. 2005).

[36] 216 F.R.D. 662 (D. Kan. 2003).

[37] 120 F. Supp. 2d 938, 953 (D. Kan. 2000).

[38] *See Leatherman v. Tarrant Cty.*, 507 U.S. 163, 168 (1993).

[39] *Sims*, 120 F. Supp. 2d at 946 (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[40] *Id.*

[41] *Patel v. Hall*, 849 F.3d 970, 978 (10th Cir. 2017) (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988)).

[42] *Moss v. Kopp*, 559 F.3d 1155, 1168–69 (10th Cir. 2009) (describing allegations needed to assert claim for damages under § 1983 against municipal entities or local government bodies, including identifying the "final policymaker" and the actions he took).

his demotion and non-promotion were consistent with a custom, practice, or policy of Defendant's.  Nor did Plaintiff allege that a city official with final policymaking authority discriminated against him on the basis of his race or national origin.

The factual allegation that "Gray . . . had the authority to implement the demotion"[43] appears to be the sole allegation that could be interpreted to mean that Gray was a final policymaker.  But this allegation is conclusory because "[a]n official is not a policymaker simply by virtue of possessing discretionary authority to exercise certain functions authorized by municipal policy; what is required is final authority to establish the policy itself."[44]  Moreover, the identification of a final policymaker is a legal issue for the Court to decide under state and local law.[45]  Kansas law places final authority over county personnel decisions in the elected board of county commissioners except for employees of independently elected officials.[46] Absent allegations that the exception applies, the Court concludes Plaintiff's pleadings fall short of stating a municipal liability claim.[47]

As to the proper remedy for this pleading defect, the Court finds allowing amendment inappropriate at this stage.  The cases cited by Plaintiff are all factually distinguishable.  In *Bolden*, the plaintiff had previously advanced both § 1981 and § 1983 claims, and the Tenth Circuit specifically found that the former implicitly incorporated the allegations contained in the

---

[43] Doc. 13, First Amended Complaint at 4, ¶ 20.

[44] *Stewart v. Bd. of Comm'rs for Shawnee Cty., Kan.*, 320 F. Supp. 2d 1143, 1152 (D. Kan. 2004) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125–28 (1988)).

[45] *Praprotnik*, 485 U.S. at 124, 129–30.

[46] *See* K.S.A. § 19–101(a); *Bd. of Cty. Com'rs of County of Lincoln v. Nielander*, 62 P.3d 247 (Kan. 2003).

[47] *See Sims v. Unified Gov't of Wyandotte Cty.*, 120 F. Supp. 2d 938, 947 (D. Kan. 2000) (concluding amended complaint fell short of stating a municipal liability claim because arguments regarding sufficiency required one-too-many steps be taken to interpret what plaintiff intended to allege).

latter.[48]  Further, the plaintiff in *Bolden* appeared pro se.  In *Dockery*, *Stewart*, and *Sims*, leave to amend was allowed in response to a motion to dismiss, not a motion for summary judgment.[49]

Here, Plaintiff appears through counsel, who has offered no good cause for the pleading deficiencies.  More importantly, amendment now will work substantial prejudice to Defendant and the Court.  Discovery is closed and the trial is scheduled in less than three months.  No discovery has been conducted on the existence of Defendant's policies or procedures, or the extent of Gray's authority to implement policy and whether his decisions are subject to meaningful review.[50]  Allowing Plaintiff to amend his claims now would create prejudice by requiring additional discovery.  Given the absence of good cause and the substantial prejudice, the Court denies leave to amend and grants Defendant summary judgment as to the § 1981 claims.[51]  This conclusion renders discussion unnecessary as to Defendant's argument regarding § 1981a(b)'s limitations on compensatory damages.

### B.     Discriminatory Non-Promotion Based on Race or National Origin

Count I alleges that Plaintiff was not promoted in 2014 as the Director of Electric Production Operations, even though he possessed superior qualifications, because of his race or national origin.  Both parties seek summary judgment on this claim.

---

[48] *Bolden v. City of Topeka*, 441 F.3d 1129, 1137 (10th Cir. 2006).

[49] *Dockery v. Unified Sch. Dist. No. 231*, 382 F. Supp. 2d 1234 (D. Kan. 2005); *Stewart*, 320 F. Supp. 2d at 1146; *Sims*, 120 F. Supp. 2d at 938.

[50] *See Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995) (identifying three elements in determining whether an individual is a final policymaker: 1) whether the official is meaningfully constrained by policies not of that official's own making; 2) whether the official's decisions are subject to any meaningful review; and 3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority).

[51] *Brown v. Unified Sch. Dist. No. 501*, No. 10-1096-JTM, 2011 WL 2174948 (D. Kan. June 3, 2011) (denying leave to amend and granting summary judgment on § 1981 claims for similar reasons), *aff'd*, 459 F. App'x 705 (10th Cir. 2012); *Butler v. La. Dep't of Health & Hosps.*, No. 07-723-SCR, 2009 WL 2382556, at *7–8 (M.D. La. July 31, 2009) (concluding defendants were entitled to summary judgment as to claims brought under § 1981 due to plaintiff's failure to cite § 1983 or indicate in any way that her § 1981 claim was brought pursuant to § 1983 in her complaints).

The parties agree the familiar *McDonnel Douglas*[52] burden shifting framework applies here.  Under *McDonnell Douglas*, Plaintiff initially bears the burden of production to establish a prima facie case of discrimination or retaliation.[53]  If Plaintiff establishes a prima facie case, the burden shifts to Defendant to articulate a facially nondiscriminatory reason for its actions.[54]  If Defendant articulates a legitimate nondiscriminatory reason, the burden shifts back to Plaintiff to present evidence from which a jury might conclude that Defendant's proffered reason is pretextual, that is, "unworthy of belief."[55]

Defendant concedes Plaintiff can establish a prima facie case of discrimination based on race or national origin.  The burden thus shifts to Defendant to articulate a legitimate, nondiscriminatory reason for not promoting Plaintiff.  Defendant asserts that Quach selected Moe over Plaintiff because: 1) Moe was the most qualified candidate, 2) he had extensive power plant knowledge; and 3) he possessed superior interpersonal, leadership, and communication skills.  The Court finds that Defendant has articulated facially nondiscriminatory reasons for not selecting Plaintiff for promotion.

Defendant contends Plaintiff cannot show that its proffered, nondiscriminatory reasons for selecting Moe were pretexts.  Plaintiff argues pretext based on the following: 1) Moe did not meet the objective qualifications for the Director position, thus Defendant's claim that "Moe was the most qualified candidate" is false; 2) Defendant's investigation of his internal complaint was so inadequate that it supports an inference of discrimination; and 3) both Gray and Quach

---

[52] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[53] *Id*. at 802.

[54] *Id.*

[55] *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998) (quoting *Randle*, 69 F.3d at 451).

commented about Plaintiff's accent yet there is no evidence that it affected his performance as Director.

### 1.    Pretext in General

A plaintiff shows "pretext by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[56]  A plaintiff typically makes a showing of pretext in one of three ways: (1) evidence that defendant's stated reason for the adverse employment action was false, *i.e.* unworthy of belief; (2) evidence that defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting plaintiff.[57]

In determining weaknesses or contradictions in proffered reasons for non-promotion, courts "examine the facts as they appear to the person making the decision, not the plaintiff's subjective evaluation of the decision."[58]  "The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs."[59]  "[T]he plaintiff must come forward with evidence that the employer acted in bad faith, or that the employer's asserted justification is false."[60]  A plaintiff can satisfy this burden by showing: "(1) the defendant fabricated documentation relating

---

[56] *Green v. New Mexico*, 420 F.3d 1189, 1192–93 (10th Cir. 2005) (internal quotations omitted).

[57] *Kendrick v. Penske Transp. Servs, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

[58] *Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1289 (10th Cir. 2013) (quoting *Luster v. Vilsack*, 667 F.3d 1089, 1093 (10th Cir. 2011)).

[59] *Luster*, 667 F.3d at 1094.

[60] *Hudson v. Leavenworth Cty. Sheriff's Office*, No. 14-CV-02065-JAR, 2015 WL 6738681, at *9 (D. Kan. Nov. 4, 2015) (citing *Young v. Dillon Cos.*, 468 F.3d 1243, 1251 (10th Cir. 2006)).

to the adverse employment action; (2) the defendant did not follow its own written procedures; (3) the stated basis for adverse employment action was a post hoc fabrication; or (4) the defendant was not actually motivated by its stated non-discriminatory justifications."[61]  The Court's role is to prevent intentional discriminatory hiring practices, not to act as a "super personnel department," second guessing employers' honestly held (even if erroneous) business judgments.[62]

## 2.    Qualifications

Plaintiff claims that Moe did not meet the objective, minimum requirement for the Director position because he had only three and one-half years of experience in coal-fired power generation, instead of the required five years.  Defendant argues that Moe possessed the minimum coal-fired power plant experience because it considers gas electric generation experience the equivalent of coal generation experience.  Defendant explained that the five year work experience in coal-fired steam electric generation requirement was left over from "the olden days."[63]  Plaintiff rejoins that by re-defining the qualifications, Defendant has offered a post hoc rationalization, which is evidence of pretext.  He points out that Defendant had revised the director position's description in February 2013, thus Defendant's reference to the "olden days" is baseless.  Moreover, Quach's interview questionnaire, prepared shortly before the interviews, also listed "a minimum of five years related work in coal fired steam-electric generation" as a requirement.  Viewed in the light most favorable to Plaintiff, the Court concludes Plaintiff has presented sufficient evidence of pretext regarding Moe being the most

---

[61] *Id.* (citations omitted).

[62] *Young*, 468 F.3d at 1250.

[63] Doc. 49-4, Quach Dep. 40:1–15.

qualified candidate for the Director position.  Because a genuine issue of fact exists as to Moe's objective qualifications, summary judgment is inappropriate.

### 3.    Inadequate Investigation

Plaintiff argues that Defendant's investigation of his internal complaint was grossly inadequate and designed by HR to find no evidence of discrimination.  He argues these facts strongly support an inference of discriminatory intent and pretext.  Defendant argues the investigation had no causal connection to Plaintiff's non-promotion and does not constitute evidence of discriminatory or retaliatory animus.  The Court disagrees.

"A 'failure to conduct what appeared to be a fair investigation of' the violation that purportedly prompted adverse action may support an inference of pretext."[64]  An employer may "defeat the inference" of pretext stemming from an allegedly unfair investigation by "simply asking an employee for his version of events."[65]  Here, Plaintiff has sufficiently raised a genuine issue as to whether his internal complaint had been properly investigated.  It appears the investigation consisted of a single interview of Gray, asking him to clarify his reasons for demoting Plaintiff.  And although HR did meet with Plaintiff the day before he filed his grievance, HR did not meet with Plaintiff afterwards to clarify the basis for him alleging discrimination.  The HR Director testified that he first became aware of a discrimination claim based on race or national origin when Plaintiff filed his charge with the EEOC.  And HR's memo regarding its investigative findings was conclusory —"Based upon the information this office has received, there is no evidence of discrimination, unfair treatment, or violation of EEO were

---

[64] *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 542 (10th Cir. 2014) (quoting *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1160 (10th Cir. 2008)).

[65] *EEOC v. BCI Coca-Cola Bottling Co. of L.A.*, 450 F.3d 476, 488 (10th Cir. 2006).

found."[66]  A jury could infer from these facts that HR did not investigate Plaintiff's claim of discrimination.  This, combined with evidence that Moe may not have met the objective, minimum requirements for the Director position and Defendant's comments regarding Plaintiff's accent, is sufficient to permit a jury to infer pretext.

### 4.   Accent

Plaintiff claims that his Vietnamese accent was the real reason for his demotion and non-promotion.  He argues that because there is no evidence that his accent interfered with his ability to perform the Director job, Defendant's proffered excuse that Moe had superior communication skills was a pretext for discrimination.  Defendant argues the accent argument should be stricken because it was not raised in the Pretrial Order.  Alternatively, Defendant argues the Director position requires strong communication and leadership skills and the testimony regarding Plaintiff's accent demonstrated Plaintiff's weaknesses in those areas, not discriminatory animus.  Additionally, because Quach, the decision-maker regarding who to recommend for promotion, was of the same race and national origin as Plaintiff, Defendant claims that Plaintiff cannot meet his burden of showing pretext.

The Court finds the sentence, "Although Mr. Nguyen speaks English fluently, Mr. Quach and Mr. Gray have acknowledged that they perceive him as difficult to understand[,]" combined with a claim of discrimination based on national origin, sufficient to alert Defendant that Plaintiff's accent was at issue.  Accent and national origin are generally inextricably intertwined.[67]  Accordingly, the Court denies Defendant's request to strike the accent argument.

---

[66] Doc. 45-17.

[67] *Griffis v. City of Norman*, 232 F.3d 901 (10th Cir. 2000) (citing *Fragante v. City & Cty. of Honolulu*, 888 F.2d 591, 596 (9th Cir. 1989)).

Plaintiff offers his performance evaluation dated March 15, 2012, as evidence that his accent did not affect his ability to perform the Director job.[68]  Quach completed the evaluation and gave Plaintiff a positive review.  He did not note any problems with Plaintiff's accent or communication skills then, but now says Plaintiff is difficult to understand and his pronunciation is deficient.  Plaintiff also offers a letter from Darrell Dorsey, Quach's predecessor, who opined that Plaintiff was fully capable of performing the Director job.  In light of Plaintiff's evidence that his accent was a non-issue with respect to his job performance, comments to the contrary by Defendant could be viewed by the jury as evidence of pretext or of animus against Plaintiff on account of his national origin.[69]

As for the-decision-maker-is-the-same-origin argument, the Court agrees that discrimination claims become less plausible and inferences of discrimination are weakened when the decision-maker is in the same protected class as the plaintiff.[70]  But this fact alone is not dispositive.  Members of a protected class may sometimes discriminate against other members of that same class.[71]  Here, Plaintiff alleged that Gray, a white male, demoted Plaintiff on the basis of his race or national origin.  If Plaintiff's demotion was a result of discrimination, a jury could find that Quach, as Gray's subordinate, not only went along with his superior's discrimination, but he continued with it by choosing not to recommend Plaintiff for promotion.

---

[68] Doc. 45-7.

[69] *See Carino v. Univ. of Okla. Bd. of Regents*, 750 F.2d 815, 819 (10th Cir. 1984) (finding a foreign accent that does not interfere with a Title VII claimant's ability to perform duties of the position he has been denied is not a legitimate justification for adverse employment decisions).

[70] *Kendrick v. Penske Transp. Servs., Inc.*, 1999 WL 450886 at *7 (D. Kan. Apr. 13, 1999) (race discrimination case noting, "the plaintiff may have difficulty establishing discrimination where the alleged discriminatory decision-maker is in the same protected class as plaintiff") aff'd, 220 F.3d 1220 (10th Cir. 2000).

[71] *Oncale v. Sundower Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998).

Given the evidence described above, the Court concludes that genuine disputes exist regarding whether Defendant's proffered non-discriminatory reasons were pretextual.  Summary judgment is thus inappropriate on the discrimination claim.

### C. Retaliatory Non-Promotion

Count II asserts Defendant did not select Plaintiff for promotion as the Director of Electric Production Operations, even though he possessed superior qualifications, in retaliation for filing an internal complaint regarding his demotion from that position.  Title VII makes it unlawful to retaliate against an employee because the employee has opposed any practice made unlawful by Title VII, or because the employee has "made a charge . . . or participated . . . in an investigation, proceeding or hearing."[72]  Defendant argues it is entitled to summary judgment on this claim because Plaintiff cannot establish a prima facie case of retaliation; and even if he could, Defendant had legitimate, non-retaliatory reasons for selecting Moe over Plaintiff for the Director position.

The *McDonnell Douglas* framework also applies to retaliation claims where direct evidence of retaliatory intent is lacking.[73]  To state a prima face case of retaliation, Plaintiff must allege three elements: 1) he engaged in protected opposition to Title VII discrimination; 2) he suffered an adverse employment action; and 3) a causal connection exists between the protected activity and the adverse employment action.[74]  Defendant challenges Plaintiff's establishment of a causal connection.

---

[72] 42 U.S.C. § 2000e–3(a).

[73] *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1228 (10th Cir. 2004) (applying *McDonnell Douglas* framework to Title VII retaliation claim); *Davis v. Unified Sch. Dist. 500*, 750 F.3d 1168, 1170 (10th Cir. 2014) (same).

[74] *Meiners*, 359 F.3d at 1229.

To establish causal connection, an employee must show either that the employer's motive for taking the adverse action was its retaliatory desire, or that circumstances exist, such as temporal proximity, which justify an inference of retaliatory motive.[75]  Defendant argues that Plaintiff cannot establish a causal connection between the alleged protected activity and the alleged retaliatory failure to promote because these two events lack temporal proximity.  Plaintiff argues Defendant's temporal proximity argument is misleading because the Director position did not become available again until 2014, thus Defendant retaliated against him at the first opportunity after Plaintiff engaged in protected activity in March 2013.

Defendant's argument is unpersuasive because temporal proximity is not the only way to establish causal connection.  In *Xia v. Salazar*,[76] the Tenth Circuit reversed the district court's grant of summary judgment on a retaliation claim despite its agreement that a ten-month period between the protected activity and the adverse action was insufficient to establish the requisite causal connection.[77]  The Tenth Circuit stated that "[a] district court errs when it 'refus[es] to consider pretext in determining there was no evidence of a causal connection between' a plaintiff's protected activity and an employer's adverse action."[78]  Accordingly, the Court will consider evidence beyond temporal proximity in analyzing causal connection.

The burden of establishing a prima facie case of discrimination or retaliation is not onerous.[79]  The Supreme Court has clarified that a Title VII plaintiff asserting a claim of

---

[75] *Beams v. Norton*, 335 F. Supp. 2d 1135, 1155 (D. Kan. 2004), *aff'd*, 141 F. App'x 769 (10th Cir. 2005) (citing *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1218 (10th Cir. 2003); *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239–40 (10th Cir. 2004)).

[76] 503 F. App'x 577 (10th Cir. 2012).

[77] *Id.* at 580.

[78] *Id.* (quoting *Bertsch v. Overstock.com*, 684 F.3d 1023, 1029 (10th Cir. 2012)).

[79] *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) ("The burden of establishing a prima facie case of disparate treatment is not onerous."); *Marquez v. Baker Process, Inc.*, 42 F. App'x 272, 276 (10th Cir.

retaliation must show that his protected activity was the but-for cause of the alleged adverse employment action.[80]

For purposes of the instant motion and viewing the evidence in a light most favorable to Plaintiff, the Court concludes that Plaintiff has set forth sufficient evidence that he would have been promoted to the Director position but for his 2012 Internal Complaint.  The pretextual evidence raises an inferential link between his discrimination and his non-selection for the Director position.  Specifically, while Quach thought Moe was the better candidate in relation to communication skills, Plaintiff was arguably more qualified for the position considering he had more educational degrees and more power plant experience than Moe, who may have not met the minimum, objective requirement of having five years of experience in coal-fired power generation.  And given Quach's knowledge of Plaintiff's demotion and his working relationship with Gray, who was named in the internal complaint, Plaintiff has presented the requisite causal connection.  The Court concludes Plaintiff has established a prime facie case of retaliation.

Proceeding to the next *McDonnell Douglas* step, the Court finds Defendant has articulated facially nondiscriminatory reasons for not selecting Plaintiff for promotion.  Plaintiff asserts the same bases for pretext in his retaliation claim as he does in his discrimination claim.  For the same reasons stated in the section above, the Court concludes genuine issues of fact remain regarding the issue of pretext, making summary judgment inappropriate on the retaliation claim.

---

2002) (stating a plaintiff's burden to demonstrate a prima facie case for a claim of retaliation is no more so than in the context of disparate treatment).

[80] *Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2534 (2013).

**IV.    Conclusion**

Plaintiff's pleadings fall short of stating a municipal liability claim under § 1983.  And given the absence of good cause and the substantial prejudice, the Court denies Plaintiff leave to amend the Complaint to add a § 1983 claim.  The Court therefore grants Defendant summary judgment as to the § 1981 claims because § 1983 provides the exclusive remedy for Plaintiff to pursue § 1981 claims against Defendant.  Plaintiff's claims for discrimination and retaliation under Title VII survive summary judgment as issues of fact remain with respect to pretext.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART (Doc. 42), and Plaintiff's Motion for Summary Judgment is DENIED (Doc. 44).

**IT IS SO ORDERED.**

Dated: <u>January 29, 2018</u>

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE